FILED

2015 Jun-18  PM 03:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of Department of Education (collectively the "United States"); Education Affiliates Inc. and its subsidiaries and affiliates, including but not limited to KIMC Investments, Inc., KIMC Texas Holdings, LLC, All State Career, Inc., KIMC Southwest Houston, LLC, Tri-State Business Institute, Inc., Technical Career Institute, Inc., Capps College Inc., Driveco CDL Learning Center, Denver School of Nursing, and Saint Paul's School of Nursing (collectively "Education Affiliates"); and the Relators as identified in Recitals Paragraphs B- F of this Agreement ("Relators") (hereafter collectively referred to as "the Parties"), each through their authorized representatives.

## RECITALS

A.     Education Affiliates ("EA") is a for profit education company based in White Marsh, Maryland.  It provides post-secondary education training programs in several professions, including nursing, medical assistants, medical coding, phlebotomy, dental hygienists, dental assistants, cosmetologists, HVAC technicians, CDL truck drivers, and electricians.  EA operates 50 campuses under various trade names, including Fortis Institute or Fortis College.  These campuses are located in several states, including Maryland, Florida, Texas, Alabama and Ohio.  EA operates All State Career, Inc. ("All State") and one of All State's campuses is located on Broening Highway in Baltimore, Maryland.  EA also operates KIMC Texas Holdings, LLC ("KIMC"), which has two campuses in the Houston, Texas area, each offering a variety of courses in the healthcare and trade professions.  EA also operates Tri-State Business Institute, Inc., ("TSBI")

1

which has a campus in the Birmingham – Hoover, Alabama area which offers allied health and medical career training programs. EA also operates Fortis College (EFC Trade, Inc. or "EFC"), which has a campus in Cincinnati, Ohio offering education and training in the nursing, healthcare, medical, dental, business, information technology, skilled trades, massage and cosmetology career fields.

        B.      On June 28, 2010, Shelley Roman ("Relator Roman") filed a *qui tam* action in the United States District Court for the District of Maryland captioned *United States ex rel. Roman v. All State Career, Inc. and Education Affiliates, Inc.,* Civil Case No. JKB-10-1730, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b).

        C.      On January 16, 2013, Dorothy Thomas ("Relator Thomas") filed a *qui tam* action in the United States District Court for the Middle District of Tennessee captioned *United States ex rel. Thomas v. Education Affiliates, Inc., et al.,* Civil Case No. 13-00038 (Judge Campbell), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b). On or about February 3, 2014, the Thomas *qui tam* was transferred to the District of Maryland and captioned *United States ex rel. Thomas v. Education Affiliates, Inc.,* Civil Case No. JKB-14-332.

        D.      On August 14, 2013, Mamie Andrews ("Relator Andrews") filed a *qui tam* action in the Southern District of Texas (Houston Division) captioned *United States ex rel. Andrews v. Education Affiliates, Inc., et al.,* Civil Case No. H-13-2366, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b). This action included retaliation claims on behalf of Relator Andrews under 31 U.S.C. § 3730(h) ("Andrews Retaliation Claims"), which are specifically not included in this Agreement.

2

E.    On June 11, 2014, Marche Atkins, Angel Calhoun, Tammy Davis, Meisha Lindsey and Janey Watkins ("Relator Atkins, et al.") filed a qui tam action in the Northern District of Alabama (Southern Division) captioned *United States ex rel. Atkins, et al. v. Fortis Institute and Education Affiliates, LLC*, Civil Case No. CV-14-1107-S, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Relator Atkins, et al. Civil Action"). The Relator Atkins, et al. Civil Action specifically does not include any personal claims or causes of action against EA by Relator Atkins, et al., including but not limited to breach of contract, race discrimination, unjust enrichment, misrepresentation, and other personal claims not included by the Covered Conduct ("Atkins, Calhoun, Davis, Lindsey and Watkins Personal Claims").

F.    On December 24, 2014, McArthur, Gruff & Associates LLC ("Relator McArthur") filed a *qui tam* action in the Southern District of Ohio (Western Division) captioned *United States ex rel. McArthur, Gruff & Associates LLC v. Education Affiliates, Inc. d/b/a/ Fortis College, Fortis Institute, All-State Career, Driveco CDL Learning Center, Denver School of Nursing, and Saint Paul's School of Nursing,* Civil Action No. 1:14-CV-977 pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b). (Collectively the five *qui tam* actions, excluding the Andrews Retaliation Claims and the Atkins, Calhoun, Davis, Lindsey and Watkins Personal Claims, referenced in the Recitals Paragraphs B-F shall be referred to as the "Civil Actions" and the individuals referred to in Recital Paragraphs B-F will collectively be referred to as the "Relators.")

G.    On July 30, 2013, an Administrative Judge affirmed the decision by the Department of Education's Office of Federal Student Aid identifying liabilities of

3

$1,952,919 against Fortis College-Miami for disbursing Title IV funds to students with invalid high school diplomas from Atlantic Southeast Academy. The Administrative Judge's decision was affirmed by the Secretary of Education on March 17, 2015 as the final agency action. *In the Matter of Fortis College*, Docket No. 12-55-SP, PRCN: 2010-4-04-27285. On March 19, 2014, the Department of Education's Office of Federal Student Aid issued a final program review determination against Fortis College-Mobile identifying liabilities of $1,091,317.23 for disbursing Title IV funds to students with invalid high school diplomas from Atlantic Southeast Academy. PRCN: 2012-4-04-28049. These matters shall be collectively referred to as "the FSA Administrative Matters."

      H.     The United States contends that on behalf of its students, EA caused claims for payment, in the form of Pell Grants, Federal Family Education Loans, Direct Loans and subsidized and un-subsidized Stafford Loans to be made to EA by the Department of Education pursuant to Title IV of the Higher Education Act.

      I.     The United States contends that it has certain civil claims against EA for engaging in the following alleged conduct:

      From January 1, 2008, to December 31, 2011, EA admissions personnel at All State either by themselves or with the assistance of an independent Wonderlic test proctor, Jacqueline Caldwell, altered certain prospective students' answers on his or her Wonderlic test or second Ability to Benefit test so as to pass a prospective student;

      From January 1, 2008, to December 31, 2013, EA admissions personnel referred prospective students without a high school diploma or a General Education Development (GED) certificate to on-line diploma mill high schools, including Atlantic Southeast

Academy and Belford High School, in order to secure a high school diploma which was used to secure admission into an EA program;

From January 1, 2008, to December 31, 2013, EA admissions personnel at All State created fake or fraudulent high school diplomas so that a student could secure admission to an EA program;

From January 1, 2007, to December 31, 2013, EA admissions and financial aid representatives at All State coached prospective students on answers to be given on the Free Application for Financial Student Aid forms ("FAFSA") so that prospective EA students could maximize the amount of Federal student financial assistance awarded;

From January 1, 2007, to December 31, 2013, EA financial aid representatives at All State altered prospective students' FAFSA forms, including reducing income or adding dependents, in order to increase the amount of Federal student financial assistance awarded;

From January 1, 2007, to December 31, 2013, EA personnel considered success in securing enrollment when determining employee compensation or promotions;

From January 1, 2010, to March 31, 2014, EA personnel at KIMC enrolled students who lacked the qualifications necessary for the programs into which they were admitted;

From January 1, 2010, to March 31, 2014, EA personnel at KIMC misrepresented graduation rates, placement statistics, and job opportunities;

From January 1, 2010, to March 31, 2014, EA personnel at KIMC used "bait and switch tactics" to enroll students into modular (monthly) programs and then switched them into unrelated and costlier quarterly programs;

From January 1, 2010, to March 31, 2014, EA personnel at KIMC altered attendance records to qualify absent students as "starts" or "in attendance" in order to retain Department of Education revenue. Such funds would have been forfeited if absent students were classified as "withdrawals;"

From January 1, 2011, to June 11, 2014, EA personnel at TSBI falsely represented the school had adequate qualified faculty for the nursing program;

From January 1, 2011, to June 11, 2014, EA personnel at TSBI required students to repeat courses because the clinics necessary for the course work were unavailable;

From January 1, 2011, to June 11, 2014, EA personnel at TSBI falsely issued grades and certified students for graduation even though the students lacked necessary clinical hours;

From January 1, 2011, to June 11, 2014, EA personnel at TSBI misrepresented students' graduation eligibility and eligibility for the applicable state licensure exam;

In 2014, EA personnel at Fortis College in Cincinnati, Ohio, maintained a recruiting staff that outnumbered career services staff five to one;

From January 1, 2007, to February 28, 2015, EA personnel at Fortis enrolled unqualified students and misled them about the opportunities they would have as EA graduates;

From January 1, 2007, to February 28, 2015, EA personnel at Fortis did not provide all of the instruction it promised;

From January 1, 2007, to February 28, 2015, EA personnel at Fortis misrepresented job placement statistics;

From January 1, 2007, to February 28, 2015, EA personnel at Fortis maintained enrollment for students who were not eligible and concealed the students' ineligible status by fabricating documents;

From January 1, 2007, to February 28, 2015, EA personnel at Fortis either did not provide required and promised laboratory or clinical learning experiences or provided such experiences with assigned tasks that were menial and took place in a location and environment which did not promote skills enhancement or have educational benefit;

An internal EA audit conducted October 14 – 17, 2014, at Fortis showed that 100% of the audited student files were missing some or all of their clinical evaluations;

From January 1, 2007, to February 28, 2015, EA personnel at Fortis employed an insufficient number of instructors or employed instructors who were unqualified, absent or who were required to teach outside their area of education and training;

From 2005 until January 16, 2013, EA altered admission, attendance, enrollment, graduation and audit records in order to retain Federal student financial assistance funds and failed to return certain Federal student financial assistance funds to the government based on student withdrawal or graduation;

From 2005 until January 16, 2013, EA misrepresented to students the scope and requirements of various degree and certificate programs.

The conduct set forth in Recital Paragraph I is referred to herein as the Covered Conduct.

J.      This Settlement Agreement is neither an admission of liability by EA nor a concession by the United States that its claims are not well founded.

K.       Relators claim entitlement under 31 U.S.C. § 3730(d) to a share of the

proceeds of this Settlement Agreement and to Relators' reasonable expenses, attorneys'

fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted

litigation of the above claims, and in consideration of the mutual promises and

obligations of this Settlement Agreement, the Parties agree and covenant as follows:

<u>TERMS AND CONDITIONS</u>

1.       EA shall pay to the United States $13 million (Thirteen Million Dollars)

(inclusive of interest) ("Settlement Amount").  On the Effective Date of this Agreement,

this sum shall constitute a debt due and immediately owing to the United States.  The

Settlement Amount shall be paid as follows:

a.       EA shall pay to the United States the Settlement Amount in accordance

with the payment schedule attached hereto as Exhibit A.  Within seven (7) days after the

Effective Date of this Agreement, EA shall pay the United States the initial payment in

the amount of $500,000.00 and thereafter make payments according to the schedule in

Exhibit A. All payments shall be made to the United States by electronic funds transfer

pursuant to written instructions to be provided by the Department of Justice.  The entire

balance of the Settlement Amount, or any portion thereof, may be prepaid without

penalty.

b.       The settlement proceeds are allocated by the United States among the

matters being settled as follows:

| | | | |
|---|---|---|---|
| *Roman*: | $6,628,249 | *Atkins*: | $994,237 |
| *Thomas*: | $1,215,179 | *McArthur Gruff*: | $994,237 |
| *Andrews*: | $1,215,179 | *In re Fortis College*: | $1,952,919 |

Each payment made as provided in Exhibit A ("Specific Installment Payment") shall be allocated by the United States according to the same ratio.

2.     Conditioned upon the United States receiving the Settlement Amount payments from EA, the United States agrees that it shall pay to Relators as soon as feasible after receipt of the payment by electronic funds transfer the amounts set forth in Exhibit B as their shares of the proceeds pursuant to 31 U.S.C. §3730(d) (the "Relators' Share"), pursuant to written instructions to be provided to the Department of Justice by each Relators' counsel. The Relators expressly understand and agree that the United States is only liable to the Relators for funds actually received or collected by the United States.

3.     EA shall pay attorneys' fees to Relators in the aggregate amount of $146,500.00 (One Hundred Forty-Six Thousand Five Hundred Dollars - the "Attorneys' Fees & Costs Settlement Amount"). This amount shall be paid as an electronic funds transfer to the Relators' attorneys (to be as reflected in Exhibit C) within seven (7) days after the Effective Date of this Agreement.

4.     In the event that EA fails to make a Specific Installment Payment within seven (7) calendar days of the date upon which each such payment is due, EA shall be in default of its payment obligations ("Default"). The United States will provide a written Notice of Default, and EA shall have an opportunity to cure such Default within seven (7) calendar days from the date of receipt of the Notice of Default. Notice of Default will be delivered to Sherry M. Gray, Esq., Powers, Pyles, Sutter and Verville, 1501 M Street, N.W., Seventh Floor, Washington, D.C. 20005, or to such other representative as EA shall designate in advance in writing. If EA fails to cure the Default within seven (7)

calendar days of receiving the Notice of Default ("Uncured Default"), the United States and the Department of Education may collect such Specific Installment Payment as provided in Paragraph 4.b. If the Specific Installment Payment cannot be collected as provided in Paragraph 4.b, the United States and the Department of Education may exercise the options in Paragraph 4.c. and 4.d.

        a.     EA, All State, KIMC, TSBI and Fortis shall upon execution of this Settlement Agreement enter into a Consent Judgment in the form attached as Exhibit D, which may be filed in the United States District Court for the District of Maryland by the United States as provided in Paragraph 4.c.

        b.     EA, All State, KIMC, TSBI, and Fortis agree that in the event of an Uncured Default, the United States may:

        (1) offset the Specific Installment Payment due pursuant to Exhibit A from any amounts, to include Federal student financial assistance funds provided pursuant to Title IV of the Higher Education Act, due and owing to EA, All State, KIMC, TSBI, and Fortis by the Department of Education at the time of the Uncured Default and apply those amounts to the amounts due under this Agreement; or exercise any other rights granted by law or in equity to collect the Specific Installment Payment, including the option of referring such matters for private collection. Any offset shall be accomplished while EA and its schools remain on the cash monitoring method of payment specified at 34 C.F.R. §668.162(e)(1), and EA and its schools shall not be transferred to

10

the cash monitoring or reimbursement methods of payments specified at C.F.R. §668.162(d) or (e)(2) in order to accomplish the offset. EA, All State, KIMC, TSBI, and Fortis agree not to contest any collection action, including offset, undertaken by the United States pursuant to this Paragraph, either administratively or in any state or federal court, except on the grounds of actual payment to the United States. Further, EA, All State, KIMC and TSBI, and Fortis waive all requirements for notice, opportunity to inspect and copy records, review of the existence of the amount or existence of the debt, opportunity for hearing (except as to any assertion of actual payment by EA), or any other procedure under 34 C.F.R. Part 30; or

(2) at its sole discretion, accept late payment of the Specific Installment Payment without interest or penalty and deem the Default cured; acceptance of any late payment creates no obligation to accept any future late payment.

(c)    EA, All State, KIMC, TSBI and Fortis agree that in the event (1) an unpaid Specific Installment Payment cannot be collected in full within 30 days of an Uncured Default pursuant to offset as specified in Paragraph 4.b (or should EA, All State, KIMC, TSBI or Fortis be transferred to a method of payment specified at 34 C.F.R. §668.162(d) or 34 C.F.R. §668.162(e)(2), cannot be collected in full within 30 days following approval of payment being made pursuant to one of those methods), or (2) there occurs a third Uncured Default (whether collected via Paragraph 4.b.1 or not) with

11

respect to three consecutive payments, the entire remaining unpaid balance of the

Settlement Amount shall become immediately due and payable, and interest on EA, All

State, KIMC, TSBI and Fortis shares shall thereafter accrue at the rate of 9.875%,

compounded daily from the date of Default, on the remaining unpaid total (principal and

interest balance).  The United States may at its discretion file the Consent Judgment

specified in Paragraph 4.a.  The United States may exercise any other rights granted by

law or in equity to enforce and collect on this agreement, including the option of referring

such matter for private collection. EA, All State, KIMC, TSBI and Fortis also agree that

Title IV liabilities in the amount of $1,952,919 are then immediately due and owing to

the Secretary of Education and that the Department of Education may collect such

amount by any means available to the Department of Education, including drawing on

any letter of credit.  EA, All State, KIMC, TSBI and Fortis also agree to waive any

notice, presentment, other requirement, or defense, and further agree not to contest any

collection action undertaken by the Department of Education pursuant to this Paragraph,

either administratively or in any state or federal court, except on the grounds of actual

payment to the United States.   Any amount collected by the Department of Education

pursuant to this Paragraph shall be credited to the Settlement Amount.   In the event the

remaining unpaid balance of the Settlement Amount is less than $1,952,919.00 at the

time (1) an unpaid Specific Installment Payment cannot be collected in full pursuant to

offset within 30 days of an Uncured Default as specified in Paragraph 4.b (or should EA,

All State, KIMC, TSBI or Fortis be transferred to a method of payment specified at 34

C.F.R. §668.162(d) or 34 C.F.R. §668.162(e)(2), cannot be collected in full within 30

days following approval of payment being made pursuant to one of those methods), or (2)

12

there occurs a third Uncured Default (whether collected via Paragraph 4.b.1 or not) with respect to three consecutive payments, EA, All State, KIMC, TSBI and Fortis agree that such balance is owed to the Secretary of Education subject to collection pursuant to this Paragraph.

        d.     At its sole option, the United States at the time (1) an unpaid Specific Installment Payment cannot be collected in full within 30 days of an Uncured Default pursuant to offset as specified in Paragraph 4.b (or should EA, All State, KIMC, TSBI or Fortis be transferred to a method of payment specified at 34 C.F.R. §668.162(d) or 34 C.F.R. §668.162(e)(2), cannot be collected in full within 30 days following approval of payment being made pursuant to one of those methods), or (2) there occurs a third Uncured Default (whether collected via Paragraph 4.b.1 or not) with respect to three consecutive payments, alternatively may rescind this Agreement and pursue the Civil Action or bring any civil and/or administrative claim, action, or proceeding against EA, All State, KIMC, TSBI and Fortis for the claims that would otherwise be covered by the releases provided in Paragraphs 6, below. In the event that the United States opts to rescind this Agreement pursuant to this Paragraph, EA agrees not to plead, argue, or otherwise raise any defenses of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that are (a) filed by the United States against EA within 120 days of written notification that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on the particular date when each Civil Action referenced in Recital Paragraphs B-F was filed. In addition, an election by the United States to file a civil action under this Paragraph shall be without prejudice to the rights of the Relators under 31 U.S.C. § 3730(d).

13

5.    In the event that EA fails to pay any amount as provided in Paragraph 3 within five (5) business days of the date on which such payment is due, EA shall be in default of its payment obligations ("Default"). Relators' counsel will provide written notice of the Default to EA and EA shall have the opportunity to cure such Default within five (5) business days from the date of receipt of the notice. Notice of Default will be delivered to Sherry M. Gray, Esq., Powers, Pyles, Sutter and Verville, 1501 M Street, N.W., Seventh Floor, Washington, D.C. 20005 or to such other representative as EA shall designate in advance in writing. If EA fails to cure such Default within five (5) business days of receiving the Notice of Default, the remaining unpaid balance of the Attorneys' Fees & Costs Settlement Amount shall become immediately due and payable, and interest shall accrue at the rate of 9.875% per annum compounded daily from the date of Default on the remaining unpaid total (principal and interest balance). EA shall consent to a Consent Judgment in the amount of the unpaid balance, and Relators' counsel, at their sole option, may: (a) collect the entire unpaid balance of the Settlement Amount, plus interest, including 9.875% interest from the date of Default, and all other amounts due upon the event of Default as specified in this Paragraph; or (b) exercise any other rights granted by law or in equity, including referral of this matter for private collection. EA agrees not to contest any consent judgment, offset, or any collection action undertaken by Relators' counsel pursuant to this Paragraph, either administratively or in any state or federal court. EA shall pay Relators' counsel all reasonable costs of collection and enforcement under this Paragraph, including attorneys' fees and expenses.

6.    Subject to the exceptions in Paragraph 8 (concerning excluded claims) below, and subject to Paragraph 17, below (concerning bankruptcy proceedings

commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), the United States releases EA together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former owners; and officers, directors, and affiliates; and the successors and assigns of any of them (collectively, including EA, the "EA Releasees") from any civil or administrative monetary claim the United States has for the Covered Conduct and the FSA Administrative Matters under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; Title IV of the Higher Education Act of 1965 as amended, 20 U.S.C. § 1070 et seq.; or common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

7.      Subject to the exceptions in Paragraph 8 (concerning excluded claims) and subject to Paragraph 17, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement), and excluding the Andrews Retaliation Claims and the Atkins, Calhoun, Davis, Lindsey and Watkins Personal Claims, Relators, for themselves and for their heirs, successors, attorneys, agents, and assigns, release the EA Releasees from all claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Relators have asserted in the Civil Actions, could have asserted, or may assert in the future against EA, arising from or related to the Civil Actions or the Covered Conduct. The Andrews Retaliation Claims and the Atkins, Calhoun, Davis, Lindsey and Watkins Personal Claims are specifically not waived, not released, and are not addressed by this Agreement.

8.      Notwithstanding the release given in paragraph 6 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.      Any criminal liability;

c.      Except as explicitly stated in this Agreement, any administrative liability or action, including the suspension and debarment rights of any federal agency, provided however, that no such liability or action by the Department of Education may be based on Covered Conduct;

d.      Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.      Any liability based upon obligations created by this Agreement.

9.      Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relators' receipt of the payments described in Paragraph 2, Relators and their heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Actions.

16

10.     In May-June 2014, EA provided sworn financial disclosure statements and various financial materials ("Financial Statements") to the United States and the United States has relied on the accuracy and completeness of those Financial Statements in reaching this Agreement. EA warrants that the Financial Statements were complete, accurate, and current as of the time that such Financial Statements were provided to the United States. EA also provided future financial projections and forecasts through the year 2017. If the United States learns of asset(s) in which EA had an interest at the time of this Agreement that were not disclosed in the Financial Statements or if the United States learns of any misrepresentation by EA on, or in connection with, the Financial Statements, and if such nondisclosure or misrepresentation changes the estimated net worth set forth in the Financial Statements by $1,300,000 or more, the United States may at its option: (a) rescind this Agreement and file suit based on the Covered Conduct, or (b) let the Agreement stand and pursue an action to collect the full Settlement Amount, in accordance with Exhibit A, plus one hundred percent (100%) of the value of the net worth of EA previously undisclosed. It is understood among the parties that EA's failure to meet, or a variance from, future financial projections and forecasts shall not constitute a violation of this paragraph. EA agrees not to contest any collection action undertaken by the United States pursuant to this provision, and immediately to pay the United States all reasonable costs incurred in such an action, including attorney's fees and expenses. In addition, an election by the United States to file suit under this Paragraph shall be without prejudice to the rights of the Relators under 31 U.S.C. § 3730(d).

11.     In the event that the United States, pursuant to Paragraph 10 (concerning disclosure of assets), above, opts to rescind this Agreement, EA agrees not to plead,

argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within 90 calendar days of written notification to EA that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on the particular date when each Civil Action referenced in Recital Paragraphs B-F was filed.

12.    EA waives and shall not assert any defenses EA may have to any criminal prosecution relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution.  Nothing in this Paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

13.    EA fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that EA has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

14.    EA fully and finally releases the Relators from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that EA has asserted, could have asserted, or may assert in the future against the Relators, related to

18

the Civil Actions and the Relators' investigation and prosecution thereof, provided however, that EA maintains and does not waive any defenses it currently has to any personal claims that may be asserted by Relators, including the Andrews Retaliation Claims and the Atkins, Calhoun, Davis, Lindsey and Watkins Personal Claims.

15.    a.    Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of EA, and its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)    the matters covered by this Agreement;

(2)    the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

(3)    EA's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4)    the negotiation and performance of this Agreement;

(5)    the payment EA makes to the United States pursuant to this Agreement and any payments that EA may make to Relators, including costs and attorneys' fees,

are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

b.      Future Treatment of Unallowable Costs:  Unallowable Costs will be separately determined and accounted for by EA, and EA shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

c.      Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Agreement, EA shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by EA or any of its subsidiaries or affiliates from the United States.  EA agrees that the United States, at a minimum, shall be entitled to recoup from EA any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment.  The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine EA's books and records and to disagree with any calculations submitted by EA or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by EA, or the effect of any such Unallowable Costs on the amount of such payments.

16.      The Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to EA, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not

intended to hinder, delay, or defraud any entity to which EA was or became indebted to

on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

17.    If within 91 days of the Effective Date of this Agreement or of any

payment made under this Agreement, EA commences, or a third party commences, any

case, proceeding, or other action under any law relating to bankruptcy, insolvency,

reorganization, or relief of debtors (a) seeking to have any order for relief of EA's debts,

or seeking to adjudicate EA as bankrupt or insolvent; or (b) seeking appointment of a

receiver, trustee, custodian, or other similar official for EA or for all or any substantial

part of EA's assets, EA agrees as follows:

a.    EA's obligations under this Agreement may not be avoided

pursuant to 11 U.S.C. § 547, and EA shall not argue or otherwise take the position in any

such case, proceeding, or action that:  (i) EA's obligations under this Agreement may be

avoided under 11 U.S.C. § 547; (ii) EA was insolvent at the time this Agreement was

entered into, or became insolvent as a result of the payment made to the United States; or

(iii) the mutual promises, covenants, and obligations set forth in this Agreement do not

constitute a contemporaneous exchange for new value given to EA.

b.    If EA's obligations under this Agreement are avoided for any

reason, including, but not limited to, through the exercise of a trustee's avoidance powers

under the Bankruptcy Code, the United States or Relators or their counsel, at its sole

option, may rescind the releases in this Agreement and bring any civil and/or

administrative claim, action, or proceeding against EA for the claims that would

otherwise be covered by the release provided in Paragraph 6, above.  EA agrees that (i)

any such claims, actions, or proceedings brought by the United States or Relators or their

counsel are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result

of the action, case, or proceedings described in the first clause of this Paragraph, and EA

shall not argue or otherwise contend that the United States' claims, actions, or

proceedings are subject to an automatic stay; and (ii) EA shall not plead, argue, or

otherwise raise any defenses under the theories of statute of limitations, laches, estoppel,

or similar theories, to any such civil or administrative claims, actions, or proceeding that

are brought by the United States or Relators or their counsel within 90 calendar days of

written notification to EA that the releases have been rescinded pursuant to this

Paragraph, except to the extent such defenses were available on the particular date when

each Civil Action referenced in Recital Paragraphs B-F was filed and (iii) the United

States has a claim against EA for treble damages and civil penalties in an amount of at

least $13 million and the United States may pursue its claim in the case, action, or

proceeding referenced in the first clause of this Paragraph, as well as in any other case,

action, or proceeding and (iv) Relators and their counsel have a claim against EA for

attorneys' fees and costs in an aggregate amount of at least $146,500 (and in individual

amounts as specified in Exhibit B) and Relators and their counsel may pursue their claims

in the case, action, or proceeding referenced in the first clause of this Paragraph, as well

as in any other case, action, or proceeding.  In addition, an election by the United States

to bring any civil and/or administrative claim, action, or proceeding against EA under this

Paragraph shall be without prejudice to the rights of the Relators under 31 U.S.C. §

3730(d).

        c.      EA acknowledges that its agreements in this Paragraph are

provided in exchange for valuable consideration provided in this Agreement.

18.    This Agreement is intended to be for the benefit of the Parties only.

19.    Upon receipt of the initial payment described in Paragraph 1.a, above, the Parties shall promptly sign and file in the Civil Actions Joint Stipulations of Dismissal of the Civil Actions pursuant to Rule 41(a)(1). The Stipulations of Dismissal shall be with prejudice as to the United States and the Relators as to the Covered Conduct. The Stipulations of Dismissal shall be without prejudice as to the United States and with prejudice as to the Relators as to all other allegations set forth in the Civil Actions.

20.    Upon execution of this Agreement, EA and the United States Department of Education shall file a joint motion with the U.S. Department of Education, Office of Hearings & Appeals to dismiss the pending administrative case, *In the Matter of Fortis College (Mobile)*, U.S. Dep't of Educ., Dkt. 14-24-SP, with prejudice. The penalties and liabilities assessed against EA or the EA Releasees in the FSA Administrative Matters are encompassed in this Agreement and shall not be sought by the U.S. Department of Education other than as permitted under Paragraph 4 of this Agreement.

21.    Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

22.    Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

23.    This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the District of Maryland. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this

Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

24.    This Agreement constitutes the complete agreement among the Parties. This Agreement may not be amended except by written consent of the Parties.

25.    The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

26.    This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

27.    This Agreement is binding on EA's successors, transferees, heirs, and assigns.

28.    This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

29.    All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

30.    This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

<u>THE UNITED STATES OF AMERICA</u>

DATED: 6/5/15          BY: _____
                              THOMAS F. CORCORAN
                              REBECCA KOCH
                              Assistant United States Attorneys
                              Office of the United States Attorney
                              for the District of Maryland


DATED: _____      BY: _____
                              ANDREA E. BELGAU
                              Assistant United States Attorney
                              Office of the United States Attorney
                              for the Southern District of Texas


DATED: _____      BY: _____
                              LANE WOODKE
                              Assistant United States Attorney
                              Office of the United States Attorney
                              for the Northern District of Alabama


DATED: _____       BY: _____
                              MARK D'ALESSANDRO
                              First Assistant United States Attorney
                              Office of the United States Attorney
                              for the Southern District of Ohio


DATED: _____      BY: _____
                              JAY MAJORS
                              Trial Attorney
                              Civil Division
                              United States Department of Justice


DATED: _____      BY: _____
                              ROBIN S. MINOR
                              Chief Compliance Officer
                              Office of Federal Student Aid
                              United States Department of Education

**THE UNITED STATES OF AMERICA**

DATED: _____          BY: _____
                               THOMAS F. CORCORAN
                               REBECCA KOCH
                               Assistant United States Attorneys
                               Office of the United States Attorney
                               for the District of Maryland

DATED: 6/6/15              BY: *Andrea E. Belgau by Rhys*
                               ANDREA E. BELGAU                *w/ permission*
                               Assistant United States Attorney
                               Office of the United States Attorney
                               for the Southern District of Texas

DATED: _____          BY: _____
                               LANE WOODKE
                               Assistant United States Attorney
                               Office of the United States Attorney
                               for the Northern District of Alabama

DATED: _____          BY: _____
                               MARK D'ALESSANDRO
                               First Assistant United States Attorney
                               Office of the United States Attorney
                               for the Southern District of Ohio

DATED: 6/6/15              BY: _____
                               JAY MAJORS
                               Trial Attorney
                               Civil Division
                               United States Department of Justice

DATED: _____          BY: _____
                               ROBIN S. MINOR
                               Chief Compliance Officer
                               Office of Federal Student Aid
                               United States Department of Education

### THE UNITED STATES OF AMERICA

DATED: _____      BY: _____

THOMAS F. CORCORAN
REBECCA KOCH
Assistant United States Attorneys
Office of the United States Attorney
for the District of Maryland

DATED: _____      BY: _____

ANDREA E. BELGAU
Assistant United States Attorney
Office of the United States Attorney
for the Southern District of Texas

DATED: 6/5/15      BY: _____

LANE WOODKE
Assistant United States Attorney
Office of the United States Attorney
for the Northern District of Alabama

DATED: _____      BY: _____

MARK D'ALESSANDRO
First Assistant United States Attorney
Office of the United States Attorney
for the Southern District of Ohio

DATED: _____      BY: _____

JAY MAJORS
Trial Attorney
Civil Division
United States Department of Justice

DATED: _____      BY: _____

ROBIN S. MINOR
Chief Compliance Officer
Office of Federal Student Aid
United States Department of Education

25

### THE UNITED STATES OF AMERICA

DATED: _____  BY: _____
                                     THOMAS F. CORCORAN
                                     REBECCA KOCH
                                     Assistant United States Attorneys
                                     Office of the United States Attorney
                                     for the District of Maryland

DATED: _____  BY: _____
                                       ANDREA E. BELGAU
                                     Assistant United States Attorney
                                     Office of the United States Attorney
                                     for the Southern District of Texas

DATED: _____  BY: _____
                                       LANE WOODKE
                                     Assistant United States Attorney
                                     Office of the United States Attorney
                                     for the Northern District of Alabama

DATED: _____  BY: _____
                                       MARK D'ALESSANDRO
                                     First Assistant United States Attorney
                                     Office of the United States Attorney
                                     for the Southern District of Ohio

DATED: _____  BY: _____
                                       JAY MAJORS
                                     Trial Attorney
                                     Civil Division
                                     United States Department of Justice

DATED: _____  BY: _____
                                       ROBIN S. MINOR
                                     Chief Compliance Officer
                                     Office of Federal Student Aid
                                     United States Department of Education

## THE UNITED STATES OF AMERICA

DATED: _____        BY: _____
                            THOMAS F. CORCORAN
                            REBECCA KOCH
                            Assistant United States Attorneys
                            Office of the United States Attorney
                            for the District of Maryland

DATED: _____        BY: _____
                            ANDREA E. BELGAU
                            Assistant United States Attorney
                            Office of the United States Attorney
                            for the Southern District of Texas

DATED: _____        BY: _____
                            LANE WOODKE
                            Assistant United States Attorney
                            Office of the United States Attorney
                            for the Northern District of Alabama

DATED: _____          BY: _____
                            MARK D'ALESSANDRO
                            First Assistant United States Attorney
                            Office of the United States Attorney
                            for the Southern District of Ohio

DATED: _____        BY: _____
                            JAY MAJORS
                            Trial Attorney
                            Civil Division
                            United States Department of Justice

DATED: 06/05/15         BY: _____
                            ROBIN S. MINOR
                            Chief Compliance Officer
                            Office of Federal Student Aid
                            United States Department of Education

**EDUCATION AFFILIATES INC.**

DATED: 6/8/15

BY: _____
DUNCAN M. ANDERSON
President and Chief Executive Officer
On Behalf of Education Affiliates Inc.

DATED: 6/8/15

BY: _____
STEPHEN J. BUDOSH
Chief Financial Officer
On Behalf of Education Affiliates Inc.

**KIMC INVESTMENTS, INC.**

DATED: 6/8/15

BY: _____
DUNCAN M. ANDERSON
CEO, President and Director
On Behalf of KIMC Investments, Inc.

**KIMC TEXAS HOLDINGS, LLC**

DATED: 6/8/15

BY: _____
DUNCAN M. ANDERSON
CEO, President and Director
On Behalf of KIMC Texas Holdings, LLC

26

**ALL STATE CAREER, INC.**

DATED: 6/8/15

BY: _____
DUNCAN M. ANDERSON
President and Chief Executive Officer
On Behalf of All State Career, Inc.


**KIMC SOUTHWEST HOUSTON, LLC**

DATED: 6/8/15

BY: _____
DUNCAN M. ANDERSON
CEO, President and Director

On Behalf of KIMC Southwest Houston,
LLC


**TRI-STATE BUSINESS INSTITUTE, INC.**

DATED: 6/8/15

BY: _____
DUNCAN M. ANDERSON
CEO, President and Director
On Behalf of Tri-State Business Institute,
Inc.


**TECHNICAL CAREER INSTITUTE, INC.**

DATED: 6/8/15

BY: _____
DUNCAN M. ANDERSON
CEO, President and Director
On Behalf of Technical Career Institute,
Inc.

27

**CAPPS COLLEGE INC.**

DATED: 6/9/15                    BY: _____
                                      DUNCAN M. ANDERSON
                                      CEO, President and Director
                                      On Behalf of Capps College Inc.


**EFC TRADE, INC.**

DATED: 6/9/15                    BY: _____
                                      DUNCAN M. ANDERSON
                                      CEO, President and Director
                                      On Behalf of EFC Trade, Inc.

28

__RELATORS__

DATED: 6/5/2015          BY: _Shelley Hernandez_

SHELLEY HERNANDEZ (Name change
from Shelley Roman by marriage,
November, 2014), Relator


DATED: June 5, 2015      BY: _____

STEPHEN B.LEBAU, Esq.
Lebau and Neuworth, P.A.
Counsel to Relator Shelley Hernandez (
Roman)


DATED: _____         BY: _____

DOROTHY THOMAS
Relator


DATED: _____         BY: _____

JAMIE BENNETT, Esq.
Ashcraft and Gerel, P.A.
Counsel to Relator Dorothy Thomas


DATED: _____         BY: _____

MAMIE ANDREWS
Relator


DATED: _____         BY: _____

JESSE L. HOYER, Esq.
James, Hoyer, Newcomer & Smiljanich, P.A
Counsel to Relator Mamie Andrews


29

**RELATORS**

DATED: _____    BY: _____

SHELLY HERNANDEZ (Name change
from Shelly Roman by marriage, November,
2014), Relator


DATED: _____    BY: _____

STEVE LEBAU, Esq.
Lebau and Neuworth, P.A.
Counsel to Relator Shelley Hernandez (
Roman)


DATED: 6-4-15    BY: _____

DOROTHY THOMAS
Relator


DATED: 6/5/15    BY: _____

JAMIE BENNETT, Esq.
Ashcraft and Gerel, P.A.
Counsel to Relator Dorothy Thomas


DATED: _____    BY. _____

MAMIE ANDREWS
Relator


DATED: _____    BY: _____

JESSE L. HOYER, Esq.
James, Hoyer, Newcomer & Smiljanich, P.A
Counsel to Relator Mamie Andrews


29

## RELATORS

DATED: _____        BY: _____
                            SHELLY HERNANDEZ (Name change
                            from Shelly Roman by marriage, November,
                            2014), Relator


DATED: _____        BY: _____
                            STEVE LEBAU, Esq.
                            Lebau and Neuworth, P.A.
                            Counsel to Relator Shelley Hernandez (
                            Roman)


DATED: _____        BY: _____
                            DOROTHY THOMAS
                            Relator


DATED: _____        BY: _____
                            JAMIE BENNETT, Esq.
                            Ashcraft and Gerel, P.A.
                            Counsel to Relator Dorothy Thomas


DATED 4/5/15            BY: _____
                            MAMIE ANDREWS
                            Relator


DATED 6/5/15            BY: _____
                            JESSE L. HOYER, Esq.
                            James, Hoyer, Newcomer & Smiljanich, P.A.
                            Counsel to Relator Mamie Andrews

DATED: 06/01/2015          BY: _____
                               MARCHE ATKINS
                               Relator

DATED: 6/6/2015            BY: _____
                               RODERICK T. COOKS, Esq.
                               Winston Cooks, LLC
                               Counsel to Relator Marche Atkins

DATED: 6/1/2.15            BY: _____
                               LEE WINSTON, Esq.
                               Winston Cooks, LLC
                               Counsel to Relator Marche Atkins

DATED: 06/02/2015          BY: _____
                               ANGEL CALHOUN
                               Relator

DATED: 6/6/2015            BY: _____
                               RODERICK T. COOKS, Esq.
                               Winston Cooks, LLC
                               Counsel to Relator Angel Calhoun

DATED: 6/4/2015            BY: _____
                               LEE WINSTON, Esq.
                               Winston Cooks, LLC
                               Counsel to Relator Angel Calhoun

DATED: 06/2/15             BY: _____
                               TAMMY DAVIS
                               Relator

30

DATED: 6/6/20

BY: _____
RODERICK T. COOKS, Esq.
Winston Cooks, LLC
Counsel to Relator Tammy Davis


DATED: _____

BY: _____
LEE WINSTON. Esq.
Winston Cooks, LLC
Counsel to Relator Tammy Davis


DATED: 6/3/15

BY: _____
MEISHA LINDSEY
Relator


DATED: 6/6/2015

BY: _____
RODERICK T. COOKS, Esq.
Winston Cooks, LLC
Counsel to Relator Meisha Lindsey


DATED: _____

BY: _____
LEE WINSTON. Esq.
Winston Cooks, LLC
Counsel to Relator Meisha Lindsey


DATED: 06/03/15

BY: _____
JANEY WATKINS
Relator


DATED: 6/6/2015

BY: _____
RODERICK T. COOKS, Esq.
Winston Cooks, LLC
Counsel to Relator Janey Watkins


31

DATED: _6-17-2015_          BY: _____
                                LEE WINSTON. Esq.
                                Winston Cooks, LLC
                                Counsel to Relator Janey Watkins


DATED: _____           BY:_____

                                Chandra Napora, agent of Valdez & Soto,
                                LLC, on behalf of and as Manager of
                                MCARTHUR, GRUFF & ASSOCIATES
                                LLC, Relator


DATED: _____           BY:_____
                                JENNIFER M. VERKAMP
                                Morgan Verkamp LLC
                                Counsel to Relator McArthur,
                                Gruff & Associates LLC


DATED: _____           BY:_____
                                FREDERICK M. MORGAN JR.
                                Morgan Verkamp LLC
                                Counsel to Relator McArthur,
                                Gruff & Associates LLC

DATED: _____        BY: _____
                             LEE WINSTON. Esq.
                             Winston Cooks, LLC
                             Counsel to Relator Janey Watkins


DATED: 6-4-15            BY: _____
                             Chandra Napora, agent of Valdez & Soto,
                             LLC, on behalf of and as Manager of
                             MCARTHUR, GRUFF & ASSOCIATES
                             LLC, Relator


DATED: 6-4-15            BY: _____
                             JENNIFER M. VERKAMP
                             Morgan Verkamp LLC
                             Counsel to Relator McArthur,
                             Gruff & Associates LLC


DATED: 6-4-15            BY: _____
                             FREDERICK M. MORGAN JR.
                             Morgan Verkamp LLC
                             Counsel to Relator McArthur,
                             Gruff & Associates LLC

**EDUCATION AFFILIATES - PAYMENT SCHEDULE**

| Quarter | Payment | 2.00% Interest | Principal | Balance |
|---|---|---|---|---|
| | | | | 12,013,466.65 |
| 6/5/2015 | 500,000.00 | - | 500,000.00 | 11,513,466.65 |
| 12/1/2015 | 125,000.00 | 57,567.33 | 67,432.67 | 11,446,033.98 |
| 3/1/2016 | 125,000.00 | 57,230.17 | 67,769.83 | 11,378,264.15 |
| 6/1/2016 | 125,000.00 | 56,891.32 | 68,108.68 | 11,310,155.47 |
| 9/1/2016 | 125,000.00 | 56,550.78 | 68,449.22 | 11,241,706.25 |
| 12/1/2016 | 250,000.00 | 56,208.53 | 193,791.47 | 11,047,914.78 |
| 3/1/2017 | 250,000.00 | 55,239.57 | 194,760.43 | 10,853,154.35 |
| 6/1/2017 | 250,000.00 | 54,265.77 | 195,734.23 | 10,657,420.12 |
| 9/1/2017 | 250,000.00 | 53,287.10 | 196,712.90 | 10,460,707.22 |
| 12/1/2017 | 500,000.00 | 52,303.54 | 447,696.46 | 10,013,010.76 |
| 3/1/2018 | 500,000.00 | 50,065.05 | 449,934.95 | 9,563,075.81 |
| 6/1/2018 | 500,000.00 | 47,815.38 | 452,184.62 | 9,110,891.19 |
| 9/3/2018 | 500,000.00 | 45,554.46 | 454,445.54 | 8,656,445.65 |
| 12/3/2018 | 500,000.00 | 43,282.23 | 456,717.77 | 8,199,727.88 |
| 3/1/2019 | 500,000.00 | 40,998.64 | 459,001.36 | 7,740,726.52 |
| 6/3/2019 | 500,000.00 | 38,703.63 | 461,296.37 | 7,279,430.15 |
| 9/3/2019 | 500,000.00 | 36,397.15 | 463,602.85 | 6,815,827.30 |
| 12/2/2019 | 500,000.00 | 34,079.14 | 465,920.86 | 6,349,906.44 |
| 3/2/2020 | 500,000.00 | 31,749.53 | 468,250.47 | 5,881,655.97 |
| 6/1/2020 | 500,000.00 | 29,408.28 | 470,591.72 | 5,411,064.25 |
| 9/1/2020 | 500,000.00 | 27,055.32 | 472,944.68 | 4,938,119.57 |
| 12/1/2020 | 1,250,000.00 | 24,690.60 | 1,225,309.40 | 3,712,810.17 |
| 3/1/2021 | 1,250,000.00 | 18,564.05 | 1,231,435.95 | 2,481,374.22 |
| 6/1/2021 | 1,250,000.00 | 12,406.87 | 1,237,593.13 | 1,243,781.09 |
| 9/1/2021 | 1,250,000.00 | 6,218.91 | 1,243,781.09 | 0.00 |
| Total | 13,000,000.00 | 986,533.35 | 12,013,466.65 | |

**EXHIBIT B - PAYMENT ALLOCATIONS**

| Quarter | Payment | U.S. D.of Ed | Roman | Thomas | Andrews | Atkins | McArthur | U.S. | Total |
|---|---|---|---|---|---|---|---|---|---|
| up front | 500,000.00 | 75,115.38 | 44,613.23 | 7,711.73 | 7,711.73 | 6,309.58 | 6,309.58 | 352,228.77 | |
| 1 | 125,000.00 | 18,778.85 | 11,153.31 | 1,927.93 | 1,927.93 | 1,577.39 | 1,577.39 | 88,057.19 | |
| 2 | 125,000.00 | 18,778.85 | 11,153.31 | 1,927.93 | 1,927.93 | 1,577.39 | 1,577.39 | 88,057.19 | |
| 3 | 125,000.00 | 18,778.85 | 11,153.31 | 1,927.93 | 1,927.93 | 1,577.39 | 1,577.39 | 88,057.19 | |
| 4 | 125,000.00 | 18,778.85 | 11,153.31 | 1,927.93 | 1,927.93 | 1,577.39 | 1,577.39 | 88,057.19 | |
| 5 | 250,000.00 | 37,557.69 | 22,306.62 | 3,855.87 | 3,855.87 | 3,154.79 | 3,154.79 | 176,114.38 | |
| 6 | 250,000.00 | 37,557.69 | 22,306.62 | 3,855.87 | 3,855.87 | 3,154.79 | 3,154.79 | 176,114.38 | |
| 7 | 250,000.00 | 37,557.69 | 22,306.62 | 3,855.87 | 3,855.87 | 3,154.79 | 3,154.79 | 176,114.38 | |
| 8 | 250,000.00 | 37,557.69 | 22,306.62 | 3,855.87 | 3,855.87 | 3,154.79 | 3,154.79 | 176,114.38 | |
| 9 | 500,000.00 | 75,115.38 | 44,613.23 | 7,711.73 | 7,711.73 | 6,309.58 | 6,309.58 | 352,228.77 | |
| 10 | 500,000.00 | 75,115.38 | 44,613.23 | 7,711.73 | 7,711.73 | 6,309.58 | 6,309.58 | 352,228.77 | |
| 11 | 500,000.00 | 75,115.38 | 44,613.23 | 7,711.73 | 7,711.73 | 6,309.58 | 6,309.58 | 352,228.77 | |
| 12 | 500,000.00 | 75,115.38 | 44,613.23 | 7,711.73 | 7,711.73 | 6,309.58 | 6,309.58 | 352,228.77 | |
| 13 | 500,000.00 | 75,115.38 | 44,613.23 | 7,711.73 | 7,711.73 | 6,309.58 | 6,309.58 | 352,228.77 | |
| 14 | 500,000.00 | 75,115.38 | 44,613.23 | 7,711.73 | 7,711.73 | 6,309.58 | 6,309.58 | 352,228.77 | |
| 15 | 500,000.00 | 75,115.38 | 44,613.23 | 7,711.73 | 7,711.73 | 6,309.58 | 6,309.58 | 352,228.77 | |
| 16 | 500,000.00 | 75,115.38 | 44,613.23 | 7,711.73 | 7,711.73 | 6,309.58 | 6,309.58 | 352,228.77 | |
| 17 | 500,000.00 | 75,115.38 | 44,613.23 | 7,711.73 | 7,711.73 | 6,309.58 | 6,309.58 | 352,228.77 | |
| 18 | 500,000.00 | 75,115.38 | 44,613.23 | 7,711.73 | 7,711.73 | 6,309.58 | 6,309.58 | 352,228.77 | |
| 19 | 500,000.00 | 75,115.38 | 44,613.23 | 7,711.73 | 7,711.73 | 6,309.58 | 6,309.58 | 352,228.77 | |
| 20 | 500,000.00 | 75,115.38 | 44,613.23 | 7,711.73 | 7,711.73 | 6,309.58 | 6,309.58 | 352,228.77 | |
| 21 | 1,250,000.00 | 187,788.46 | 111,533.08 | 19,279.33 | 19,279.33 | 15,773.94 | 15,773.94 | 880,571.92 | |
| 22 | 1,250,000.00 | 187,788.46 | 111,533.08 | 19,279.33 | 19,279.33 | 15,773.94 | 15,773.94 | 880,571.92 | |
| 23 | 1,250,000.00 | 187,788.46 | 111,533.08 | 19,279.33 | 19,279.33 | 15,773.94 | 15,773.94 | 880,571.92 | |
| 24 | 1,250,000.00 | 187,788.46 | 111,533.08 | 19,279.33 | 19,279.33 | 15,773.94 | 15,773.94 | 880,571.92 | |
| Total | 13,000,000.00 | 1,952,999.94 | 1,159,944.03 | 200,505.01 | 200,505.01 | 164,049.02 | 164,049.02 | 9,157,947.97 | 13,000,000.00 |

EXHIBIT C

1.  Lebau & Neuworth, LLC                          $35,000

2.  Ashcraft & Gerel, LLP                          $24,000

3.  James, Hoyer, Newcomer & Smiljanich, PA        $35,000

4.  Winston Cooks, LLC                             $22,500

5.  Morgan Verkamp LLC                             $30,000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| Plaintiff, | * |
| v. | *    CIVIL ACTION NO. |
| EDUCATION AFFILIATES, INC., | * |
| ALL STATE CAREERS, INC., KIMC | |
| SOUTHWEST HOUSTON, LLC. AND FORTIS | * |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### STIPULATION FOR CONSENT JUDGMENT AS TO EDUCATION AFFILIATES, INC., ALL STATE CAREERS, INC., KIMC SOUTHWEST HOUSTON, LLC AND FORTIS

Plaintiffs, United States of America ("United States") and the Defendants, Education Affiliates, Inc., All State Careers, Inc., KIMC Southwest, LLC and Fortis ("Consenting Parties") have consented to the making and entry of this Stipulation for Consent Judgment without trial, and further agree as follows:

The United States investigated allegations of violations of the False Claims Act, 31 U.S.C. § 3729, *et seq.* (as amended), the Program Fraud Civil Remedies Act, 31 U.S.C. § 3801-3812 and under the common law theories of fraud, unjust enrichment and payment under mistake of fact against the Consenting Parties and prior to suit being filed reached a settlement with the Consenting Parties. This Court has jurisdiction over the subject matter of this litigation and the Plaintiffs and the Consenting Parties agree that this Court has jurisdiction over them.

As part of the settlement of the above-referenced allegations, Consenting Parties agreed to pay the United States, jointly and severally, the sum of $13,000,000.00 (the "Settlement Amount") according to the Payment Schedule attached hereto as Exhibit A.

If there is a Uncured Payment Default by the Consenting Parties in making any of the above-referenced payments set forth in the Payment Schedule, this judgment shall be automatically entered, in favor of the Plaintiffs against Consenting Parties, jointly and severally, in the full amount that is due and owing at the time of the default including interest at 9.875% on the balance due starting at the time of payment Default, plus all reasonable costs of collection and enforcement, including attorneys' fees and expenses.

Once the judgment is entered, it shall be recorded among the records of the Court where each of the Consenting Parties resides.

ROD J. ROSENSTEIN
United States Attorney

By: _____
Thomas F. Corcoran
Assistant United States Attorney

_____
Education Affiliates, Inc.

By: _____

Title: CEO, President & Director

All State Careers, Inc.

By: _____

Title: CEO, President & Director


KIMC Southwest Houston, LLC

By: _____

Title: CEO, President & Director


Fortis

By: _____

Title: CEO, President & Director